<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| HAI KIM NGUYEN, | : | |
| | : | |
| Petitioner, | : | Civil Action No. 13-6845 (MAS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JOHN JAY HOFFMAN, et al., | : | |
| | : | |
| Respondents. | : | |

<u>**SHIPP, District Judge**</u>

     Petitioner Hai Kim Nguyen ("Petitioner"), confined at Attica Correctional Facility in Attica, New York, filed the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"), challenging a sentence imposed by the State of New Jersey for aggravated manslaughter and attempted murder.[1]  For reasons stated below, the Court denies the Petition but grants a certificate of appealability on one ground.

## I.    FACTUAL BACKGROUND

     On March 24, 2002, Petitioner, while attending a wedding reception in Green Brook, New Jersey, shot and killed another guest at the reception, Tuan Thieu, following an argument.[2] Petitioner also shot at another by-stander, but missed.  When police arrived at the scene, several witnesses, who knew Petitioner personally, identified Petitioner as the shooter.  Witnesses told the

---

[1] Petitioner is confined in a New York facility because he is currently serving a sentence imposed by the State of New York for another crime; that sentence is not the subject of the instant Petition.

[2] The Court relies on the factual summary provided by the state court on Petitioner's direct appeal in *State v. Nguyen*, 419 N.J. Super. 413, 417-21 (App. Div. 2011), except where explicit cites are provided, and references only facts relevant to the instant Opinion here.

police that Petitioner fled the scene in a 1996 Honda with Alabama license plates, which they had seen him drive on other occasions. They also gave police a Brooklyn, New York, address, at which they stated he was living at the time.

The next day, New Jersey detectives, accompanied by New York police officers, attempted to arrest Petitioner at the Brooklyn address. Upon arrival, Petitioner barricaded himself and his two-year old son in the residence, and threatened to shoot his son and the police if they attempted to enter. (Sentencing Tr. 29:11-16, ECF No. 1-4.) After four hours of negotiations, Petitioner agreed to end the standoff and was immediately arrested. As Petitioner was taken into custody, Petitioner asked, "[a]re you taking me back to New Jersey? Am I a witness or am I under arrest?" (Pet. 45, ECF No. 1.) He was then taken to a hospital, and while a nurse was conducting a psychiatric evaluation interview to see if he understood why he was in the hospital, Petitioner replied, "I killed somebody. They said I killed somebody." (*Id.*)

After the arrest, police searched Petitioner's residence and car. Police found a gun within a hidden compartment in the car, which forensic testing later showed to be the gun used to shoot and kill the victim. On April 24, 2002, Petitioner was indicted for murder and various other offenses by the State of New Jersey, and on November 17, 2003, Petitioner was extradited from New York to New Jersey for prosecution of his New Jersey indictment.[3]

What occurred after is a complicated and protracted procedural history. The following is the timeline of the criminal proceedings as indicated by the record:

---

[3] After Petitioner was arrested, he was convicted in New York of various other crimes, including one conviction related to his standoff with the police at his residence. (Plea Tr. 13:2-14:16, ECF No. 1-3.) Therefore, at the time of his extradition, Petitioner was serving his New York sentence in a New York prison.

Prior to motion practice (March 2002 to September 2004):

- Petitioner was arrested on March 25, 2002. (Plea Tr. 12, ECF No. 1-3.)
- On April 24, 2002, Petitioner was indicted by a grand jury in New Jersey on first degree murder and other charges related to the shooting. (*Id.*)
- On April 30, 2003, Petitioner pled guilty to three New York offenses, one of which was related to the standoff. (*Id.* at 8.) Petitioner was sentenced to an aggregate sentence of fifteen years. (*Id.*)
- On May 13, 2003, Petitioner waived extradition. (*Id.*)
- On August 20, 2003, New York agreed to extradite Petitioner. *Nguyen*, 419 N.J. Super. 413, 419 (App. Div. 2011).
- On November 7, 2003, Petitioner was extradited to New Jersey. (Plea Tr. 14.)
- An arraignment status conference was scheduled for January 30, 2004, but was adjourned. (Sentencing Tr. 9.)
- The conference was then held on February 20, 2004. (*Id.*)
- On March 2, 2004, Petitioner's counsel filed a motion to withdraw, which was granted. (*Id.*)
- On June 4, 2004, a scheduled status conference was adjourned. (*Id.*)
- On July 7, 2004, Petitioner's new counsel filed an appearance. (*Id.* at 10.)

Suppression motions (September 2004 to August 2006):

- On September 2, 2004, defense counsel filed motions to suppress physical evidence, to suppress statements for a *Sands Brunson* hearing,[4] to preclude other bad acts, and to conduct a hearing to determine the admissibility of statements made to non-police witnesses. (*Id.*)
- On February 22, 2005, a pretrial motion hearing on the motions to suppress the handgun and statements to the police was adjourned because Petitioner's counsel was on trial in another case. (Plea Tr. 15.)
- On September 6 and September 27, 2005, hearings were held on Petitioner's motions to suppress. (*Id.*)
- Petitioner filed a post-hearing brief on November 11, 2005. (*Id.*)
- The State filed post-hearing briefs on October 25, 2005, and February 6, 2006. (*Id.*)
- On December 23, 2005, the state court signed an order authorizing release of medical and psychiatric records from Trenton State Prison to defense counsel. (*Id.*)
- Oral argument was held on April 27, 2006, for the motions to suppress, and Petitioner's motions were denied. (*Id.*)
- On May 15, 2006, a status conference was adjourned because defense counsel was on vacation. (*Id.*)

---

[4] *State v. Sands*, 76 N.J. 127 (1978), and *State v. Brunson*, 132 N.J. 377 (1993), are two New Jersey Supreme Court cases which held that whether a defendant's prior criminal conviction(s) may be admitted as evidence in a criminal trial is within the sound discretion of the trial court. A *Sands Brunson* hearing is the hearing that trial courts in New Jersey hold to determine if prior convictions are admissible as evidence.

3

- On June 2, 2006, a status conference was adjourned because defense counsel was still on vacation. (*Id.* at 15-16.)

Insanity defense (August 2006 to June 2008):

- Petitioner filed a notice of insanity defense and lack of requisite state of mind on August 30, 2006. (*Id.* at 16.)
- A consent order was entered by the state court on January 4, 2007, for the release of medical records from the New York Department of Health and Mental Hygiene Correctional Health Services. (*Id.*)
- On January 5, 2007, a status conference was adjourned because defense counsel was involved in another matter. (*Id.*)
- On January 17, 2007, defense counsel provided a copy of Petitioner's medical and psychiatric record to the State, and a copy was provided to the State's expert on January 26, 2007. (*Id.*)
- On February 2, 2007, a status conference was adjourned because defense counsel was on trial. (*Id.*)
- The State's expert examined Petitioner on March 2, and March 30, 2007. (*Id.*)
- On April 19, 2007, a status conference was adjourned because defense counsel was on trial in another case. (*Id.*)
- On August 8, 2007, a status conference was adjourned because the prosecutor was on trial. (*Id.*)
- The State's expert again examined Petitioner on October 5, 2007. (*Id.*)
- On October 22, 2007, a status conference was adjourned because defense counsel was on trial. (*Id.* at 16-17.)
- On December 13, 2007, a competency hearing was held. (*Id.* at 17.)
- Defense counsel indicated that an additional examination would be conducted by the defense's expert in January of 2008, at which point an additional report would be filed. (*Id.*) This did not transpire. (*Id.*)
- On May 20, 2008, a status conference was adjourned because defense counsel was on trial. (*Id.*)
- On June 26, 2008, the state court ordered that Petitioner was competent to proceed. (*Id.*)

Pre-trial (June 2008 to September 2009):

- On November 3, 2008, a status conference was adjourned because defense counsel was unavailable. (*Id.*)
- On November 20, 2008, a status conference was adjourned because defense counsel was unable to appear. (*Id.*)
- On February 11, 2009, a written opinion was issued by the state court on the admissibility of statements to non-police witnesses. (*Id.* at 18.)
- The State requested an adjournment after a June 2009 trial date was proposed and instead proposed a September 29, 2009 trial date. (*Id.*)

- On July 1, 2009, Petitioner filed a notice of motion to dismiss the indictment for violation of the Interstate Agreement on Detainers ("IAD"), N.J.S.A. § 2A:159A-1, *et seq.*, or in the alternative, for jail credit. (*Id.* at 19.)

In his motion to dismiss the indictment, Petitioner argued that his indictment should be dismissed because the State had failed to prosecute him within 120 days as required by the IAD. Under the IAD, when the State requests an extradition, "trial shall be commenced within 120 days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." N.J.S.A. 2A:159A-4(c). During oral argument, trial counsel argued, and the trial court accepted his argument, that:

> a defendant has no obligation to file a request for a speedy trial pursuant to [the IAD], [a defendant] has no obligation, as a matter of fact, to file a motion to dismiss pursuant to a violation of that agreement, and quite frankly, even if we look at the principles of speedy trial . . . that we recognize, . . . New Jersey does not have a time limit on the rules for when a trial is supposed to be concluded. But even if we look at that, a defendant has no obligation to bring himself to trial.

(Plea Tr. 5:19-6:4.) The trial court denied the motion citing to Article Six of the IAD, which allows courts to toll the 120-day time limit whenever a defendant is deemed unable to stand trial. (*Id.* at 20-21.) The trial court reasoned that New Jersey courts have construed Article Six to mean that if the delay is caused by a defendant, then that defendant is deemed unable to stand trial, and therefore the 120-day limit is tolled for the delay caused by such defendant. (*Id.*)

On September 23, 2009, on the eve of trial, Petitioner pled guilty to one count of aggravated manslaughter and one count of attempted murder and was sentenced to twenty years imprisonment. (*Id.* at 17.) The plea agreement stipulated that his New Jersey sentence would be served concurrently with his New York sentence, starting from the time of the entry of plea. (*Id.* at 14.) The prosecutor stated on the record, in the presence of Petitioner, that "defendant is not entitled to any jail credit for the time he's been in New Jersey because he's receiving credit for his New York

sentence. So that concurrence [agreed to in the plea agreement] would run from this day forward." (*Id.*) The plea agreement preserved Petitioner's rights to argue dismissal of the indictment based on a violation of the IAD; to appeal all his pretrial motions, suppression issues, and all issues previously raised in the trial court; and to argue for jail credit. (*Id.*)

On direct appeal, Petitioner asserted the same IAD argument. In opposition, the State raised an argument not raised in the trial court. Instead of arguing that there was no violation of the IAD, the State argued that the IAD did not apply in his case because Petitioner was not actually extradited under the IAD. *Nguyen*, 419 N.J. Super. at 420. According to the State, Petitioner was extradited under the Uniform Criminal Extradition Act ("UCEA"), N.J.S.A. 2A:160-6 to -35, which does not contain any provision requiring a defendant to be brought to trial within a specified period of time. *Id.* The appellate court accepted this argument, but noted that "the parties and trial court assumed when defendant moved to dismiss the indictment on the ground [that] he had not been brought to trial within 120 days, as required by [the IAD], that New Jersey had obtained custody of defendant pursuant to the IAD." *Id.* at 426. Nevertheless, the appellate court held that this misconception of the legal process did not alter the essential nature of the proceeding and rejected Petitioner's IAD argument on appeal. *Id.*

Petitioner then sought post-conviction relief ("PCR") in state court. (*See* Pet. 26.) Petitioner raised the same grounds for relief as he does in this Court: (1) Petitioner's trial counsel provided ineffective assistance by failing to pursue a speedy trial violation; (2) Petitioner's appellate counsel provided ineffective assistance by failing to pursue review of the trial court's denial to suppress statements made by Petitioner at the time of his arrest and when he was in the hospital; and (3) Petitioner's due process rights were violated when the state court refused to credit jail-time served between the time of arrest/indictment of his New Jersey offenses and the time of

his sentencing. (*Id.* at 29-35.)  The PCR courts held that: (1) trial counsel was effective in protecting Petitioner's speedy trial rights; (2) appellate counsel need not have raised meritless claims; and (3) Petitioner was not entitled to jail-time credit for time served while awaiting trial. (*Id.* at 29-35; 54-57.) After exhausting his state-court remedies, Petitioner filed the instant Petition.

## II.    STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).[5]

When a claim has been adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).  A state-court decision involves an "unreasonable application" of clearly established federal law if the state court

---

[5] Although Petitioner is currently incarcerated in a New York prison pursuant to a New York offense, because his plea agreement for the New Jersey conviction stipulates that his New Jersey sentence is to be served concurrently with his New York sentence, he is "in custody" for the purposes of his habeas petition challenging the New Jersey sentence. *See Walker v. Wainwright*, 390 U.S. 335, 336-37 (1968) (rejecting the district court's decision to dismiss a habeas petition, based on the rationale that, due to concurrent sentences, the petitioner would not be released from custody even if the challenged sentence was invalidated; "[w]hatever its other functions, the [purpose] of the writ of habeas corpus is to test the legality of a prisoner's current detention . . . it is immaterial that another prison term might still await him even if he should successfully establish the unconstitutionality of his present imprisonment"); *U.S. ex rel. Rybarik v. Maroney*, 406 F.2d 1055, 1056 (3d Cir. 1969); *Johnson v. Ponton*, 780 F.3d 219, 223 (4th Cir. 2015); *Peyton v. Rowe, Saunders v. Tennis*, No. 09-1916, 2011 WL 2117559, at *2 n.3 (E.D. Pa. May 26, 2011).

(1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to state court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

## III.   DISCUSSION

As summarized above, Petitioner raises three grounds for relief, the same claims that Petitioner raised on post-conviction review. The Court addresses each of these claims below, though not in the order asserted in the Petition.

### A.   Ineffective Assistance of Appellate Counsel – Ground II

Petitioner argues that appellate counsel's failure, on direct appeal, to challenge the trial court's ruling that Petitioner's statements made after arrest and in the hospital were not inadmissible as violations of the *Miranda* rule constituted an ineffective assistance of counsel. The

8

PCR trial court found that the trial court had considered the admissibility of these statements, and correctly deemed them admissible. (Pet. 45.) As such, the court found that appellate counsel was not ineffective because he need not raise meritless claims on appeal. (*Id.*) The PCR appellate court affirmed, adopting the PCR trial court's findings. (*Id.* at 57.)

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" *Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014) (per curiam). To satisfy the second prong, prejudice, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.[6] To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." *Hinton*, 134 S. Ct. at 1083. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a

---

[6] The reasonable probability standard is less demanding than the preponderance of the evidence standard. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

reasonable doubt respecting guilt." *Id.* at 1089 (quoting *Strickland*, 466 U.S. at 695). "In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, the Court finds that the state court's ruling was a reasonable application of clearly established federal law. The PCR courts found that appellate counsel's assistance was not ineffective because he need not have raised a meritless argument already addressed amply by the trial court, stating that "[t]he failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." (Pet. 45.) This Court finds no cause to question that determination. Indeed, even if Petitioner's statements were ruled to be inadmissible, there was still ample evidence of guilt unrelated to Petitioner's statements, including but not limited to unequivocal eyewitness testimony, the murder weapon being found hidden in Petitioner's car, and that Petitioner resisted arrest by engaging in a hostage situation where he threatened to kill his own son. *See Saranchak v. Beard*, 616 F.3d 292, 311 (3d Cir. 2010) (holding that overwhelming evidence against petitioner precludes a finding of prejudice in an ineffective assistance of counsel claim).

Furthermore, Petitioner agreed to a plea agreement before trial, so even if the appellate court ruled that the statements were inadmissible, the appellate court was more than likely to hold that it was harmless error, as opposed to vacating the plea agreement, remanding the case, and ordering a trial to be held. *See Sampson v. Grace*, No. 06-5331, 2008 WL 687483, at * 17 (E.D. Pa. Mar. 11, 2008) (finding that the use of inadmissible hearsay at trial was harmless error in light of the overwhelming evidence of petitioner's guilt); *see also Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (finding that a state-court decision was only unreasonable when it "was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement") (citation omitted). Therefore, there was nothing unreasonable in the PCR courts' finding that appellate counsel was not ineffective because this was a meritless claim, and Petitioner has failed to show that the state court's determination on this issue was incorrect by clear and convincing evidence. As such, the state court's determination is neither contrary to, nor an unreasonable application of, federal law, nor based on an unreasonable determination of the facts, and Petitioner is not entitled to relief on this ground.

### B.    Jail-Time Credit – Ground III

Petitioner argues that the state court violated his due process rights when it refused to grant him jail-time credit toward his New Jersey sentence for the seven and a half years he was awaiting trial. (Pet'r's Br. 31, ECF No. 1-2.) The PCR appellate court rejected this argument, finding that Petitioner was not entitled to the jail-time credit under state law. *State v. Nguyen*, No. A-5303-11T1, slip op. at 8-9 (N.J. Super. Ct. App. Div. Feb. 13, 2013), ECF No. 14-13. Although Petitioner does not specify whether he is raising a substantive or procedural due process claim, based on Petitioner's memorandum of law in support of his Petition (*see* Pet'r's Br. 31-35) the Court construes Ground III the only way possible–that Petitioner is raising a substantive due process claim, under the theory that state law created a liberty interest.[7]

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citation and quotation marks

---

[7] Petitioner's claim cannot be construed as a procedural due process claim because Petitioner does not allege that the state's procedure in reviewing his claim was defective; indeed, the record shows that the state allowed Petitioner to raise this claim on PCR and properly reviewed and addressed the substance of his claim.

omitted).  While the Supreme Court has not addressed the sort of jail-time credits that Petitioner is arguing for in a due process context, it is well-established that in the context of credits for good behavior, good behavior credit is not a constitutionally protected liberty interest unless the state explicitly establishes procedures to award such credit.  *Swarthout v. Cooke*, 131 S. Ct. 859, 862 (2011).  "There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication."  *Id.*  Moreover, even if a liberty interest has been created by the State, federal law does not control any specific methodology for calculating sentencing credit for state prisoners, and the role of the federal court is limited to the enforcement of the due process rights created by state law.  *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7-9 (1979).

The Court finds that the established Supreme Court law for good behavior credit applies equally here.  Therefore, if the state court unreasonably refused to extend the principles underlying the case law on good behavior credit to Petitioner's request for jail-time credit, that decision would constitute an unreasonable application of clearly established federal law.  *Williams*, 529 U.S. at 407.  Here, it appears Petitioner is asserting that New Jersey Court Rule 3:21-8, which states, "[t]he defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence," created a liberty interest in Petitioner to receive jail-time credit.  However, as the PCR trial court made clear, "[t]his jail credit is only available for a period of incarceration attributable to that crime, and not for time spent in custody on other charges not subject to credit." (Pet. 46.); *see also State v. Carreker*, 172 N.J. 100, 115 (2002) (holding that defendant was not entitled to jail credit under Rule 3:21-8 because she was incarcerated under her New York sentence while awaiting disposition of her New

Jersey offense, since "[g]enerally, that form of credit applies to confinement attributable to the offense that gave rise to the sentence"). This holding was affirmed by the PCR appellate court. (Pet. 55-56.) The source of Petitioner's alleged liberty interest, the New Jersey Court Rule, is a matter of state law, and this Court is bound by the state court's interpretation on when such a credit would or would not apply.[8] *See Greenholtz*, 442 U.S. at 8 (holding that a state may create a liberty interest by establishing a parole system, but it has no duty to do so; therefore, states are free to define the actual scope of any state-created liberty interest). As such, New Jersey has not created a liberty interest under the Due Process Clause in the instant matter, and the state court's determination is neither contrary to, nor an unreasonable application of, federal law.[9] Accordingly, Petitioner is not entitled to relief on this claim.

---

[8] The Court must make note of two recent New Jersey Supreme Court decisions, *State v. Rawls*, 219 N.J. 185 (2014), and *State v. Hernandez*, 208 N.J. 24 (2011), which held that Rule 3:21-8 requires jail-time credits be given to a defendant for time served between indictment and conviction even if the defendant was incarcerated for a different indictment. *Rawls*, 219 N.J. at 194 ("Rule 3:21-8 requires that a defendant receive jail credit even though the charges are not directly responsible for his or her incarceration."); *Hernandez*, 208 N.J. at 48 ("Accordingly, we interpret Rule 3:21-8 to provide exactly what it states in plain language, and prosecutors and defendants negotiating plea recommendations as well as sentencing judges should so understand it."). The *Hernandez* court, however, explicitly distinguished that case from *Carreker*, *supra*. *Hernandez*, 208 N.J. at 45. Therefore, although there may be reason to believe that the New Jersey Supreme Court may extend Rule 3:21-8 to cases similar to the instant matter in the future, this Court is constrained by the precedent set forth by the New Jersey Supreme Court in *Carreker*. Also importantly, the state court's denial of Petitioner's post-conviction relief occurred after the *Hernandez* decision, so it is presumed that the state court did not find *Hernandez* applicable to the instant matter.

[9] In his brief, Petitioner relies on three Supreme Court cases for support–*In re Winship*, 397 U.S. 358 (1970), *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *North Carolina v. Pearce*, 395 U.S. 711 (1969). Plaintiff failed to demonstrate the relevance of these cases. *Winship* dealt with the burden of proof in a juvenile delinquency proceeding. 397 U.S. at 364. *Wolff* was concerned with what procedural due process protection the state must afford once it *has* created a liberty interest. 418 U.S. at 554. *Pearce* addressed the issue of resentencing, requiring that a prisoner be credited with time served for a previous sentence where he successfully invalidated the previous sentence and received a new sentence upon retrial. 395 U.S. at 718-19. None of these issues are relevant to the claims raised in the Petition.

### C.     Ineffective Assistance of Trial Counsel – Ground I

Lastly, Petitioner argues that trial counsel was ineffective for failing to raise a sixth amendment speedy trial challenge.  The PCR trial court rejected this claim because it found that the "trial court did pursue a speedy trial claim on the eve of trial." (Pet. 42.) Therefore, the PCR trial court found that trial counsel's performance did not fall below an objective standard of reasonableness.  (*Id.* at 43.)   Furthermore, the PCR trial court also found that there was no prejudice, as

> Petitioner was the cause of the delay as he filed numerous valid pretrial motions in furtherance of exercising his constitutional rights.  As such, Petitioner cannot claim that his speedy trial right was violated because the motions defense counsel was duty bound and rightfully filed in order to advocate on behalf of Petitioner, took an extensive period of time to complete.

(*Id.* at 44.) On appeal, the PCR appellate court affirmed, specifically referencing *Barker v. Wingo*, 407 U.S. 514 (1972), the landmark Supreme Court case on sixth amendment speedy trial claims, to determine if a sixth amendment speedy trial violation had occurred.  (Pet. 55.)  The PCR appellate court echoed the PCR trial court's reasoning that "the matter had been delayed because defense counsel filed numerous pretrial motions." (*Id.*)  Since the Court is granting a certificate of appealability on this claim, *infra*, the Court addresses the state court's analyses of both prongs of the *Strickland* test to highlight its concerns.

### 1.     Objectively Reasonable Performance

In affirming the denial of post-conviction relief, the PCR appellate court relied on the PCR trial court's factual finding that "[t]he transcript of the motion to dismiss for a speedy trial violation and plea dated September 23, 2009, reveals that trial counsel did pursue a speedy trial claim on the eve of trial." (Pet. 42.)  Indeed, in the transcript referenced by the PCR trial court, the trial court did make a finding on the record, that "[t]he delay necessitated by this litigation does not,

therefore, run afoul of the IAD or *the standards set forth in Barker versus Wingo*," the U.S. Supreme Court sixth amendment speedy trial decision.  (Plea Tr. 12 (emphasis added).)  Based on that finding, the PCR courts ruled that trial counsel's performance was not unreasonable; certainly, there can be no ineffective assistance of counsel for failing to raise a sixth amendment claim if trial counsel did raise such a claim.

This Court is troubled, however, by the contradictory ruling of the appellate court on direct appeal.  Indeed, Petitioner's claim is largely based on the finding, on direct appeal, that Petitioner did *not* raise a speedy trial claim in the trial court.  *Nguyen*, 419 N.J. Super. at 420 n.1 ("Such a defendant may, of course, invoke the speedy trial protections of the federal and state constitutions. Defendant has not asserted a violation of his constitutional right to a speedy trial.").  The implication of this finding is clear – because of trial counsel's mistaken belief that the IAD governed this case, Petitioner lost the meaningful opportunity to raise a speedy trial claim on direct appeal.  A reasonable argument can be made that trial counsel's mistake, notwithstanding the trial court's findings with respect to *Barker*, can be construed as ineffective assistance.  "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*."  *Hinton*, 134 S. Ct. at 1088 (holding that counsel's assistance was unreasonable because he wrongly believed state law prohibited him from spending more than $1,000 on experts); *see Harrington v. Richter*, 562 U.S. 86, 110 (2011) ("*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.").

Nonetheless, this Court cannot find the PCR courts' ruling, that trial counsel was not ineffective, unreasonable.  It was reasonable for the PCR courts to conclude, based on the trial court transcripts, that trial counsel did raise a speedy trial claim.  By specifically addressing *Barker*,

15

the trial court's ruling can be seen as explicitly construing Petitioner's motion to dismiss the indictment to raise a constitutional speedy trial claim as well as an IAD claim. Needless to say, the Court recognizes that there appears to have been confusion within the state courts – the appellate court's finding on direct appeal, that trial counsel did not raise a speedy trial claim in the trial court, directly contradicted the PCR trial court's finding that trial counsel did raise such a claim. But that confusion is not enough to overcome the presumption of correctness this Court must afford to the state court's factual findings, where the PCR trial court's ruling followed the ruling on direct appeal, and was subsequently affirmed by the PCR appellate court.[10]  *See Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) ("To decide the present case, therefore, we begin by asking which is the last *explained* state-court judgment[.]") (emphasis in the original); *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014) ("In considering whether [deference] applies, we review the 'last reasoned decision' of the state courts on petitioner's claims.").  "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see Miller-El*, 537 U.S at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."); *Harrington*, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes

---

[10] Curiously, in affirming the PCR trial court's denial, the PCR appellate court stated, "the PCR court correctly found that defendant was not denied the effective assistance of counsel because his attorney *did not* seek dismissal of the indictment on the ground that the delay in resolving the charges violated his constitutional right to a speedy trial under the Sixth Amendment to the United States Constitution." (Pet. 54-55 (emphasis added).)  This puzzling statement further contributes to the potential confusion as to the state court findings.  Nevertheless, the Court presumes that the inclusion of "not" was a typographical error, and construes this statement as a reliance on the PCR trial court's finding that trial counsel did raise a sixth amendment speedy trial claim.

federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.") (citation omitted).  Therefore, the Court finds the state court's ruling on this prong of the *Strickland* test, that trial counsel did not provide ineffective assistance, was a reasonable application of clearly established federal law, based on a reasonable determination of the facts.

### 2.   Prejudice

Ordinarily, once the Court finds that Petitioner's claim does not meet the first prong of the *Strickland* test, Petitioner's claim necessarily fails, and the Court need not address the prejudice prong of the test.  *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").  As the Court is granting a certificate of appealability on this claim, however, the Court will address both prongs of the *Strickland* test to fully develop the record for the purposes of appeal.

The PCR courts held that there was no prejudice because Petitioner's speedy trial rights were not violated.  As stated above, the PCR appellate court analyzed the second prong of the *Strickland* test by explicitly referencing *Barker*, addressing directly the question of whether there was in fact a constitutional speedy trial violation in the trial court.  The PCR appellate court concluded that "the matter had been delayed because defense counsel filed numerous pretrial motions."  (Pet. 55; *see also* Pet. 44; Plea Tr. 12.)  As the PCR appellate court based its speedy trial determination solely on the conclusion that Petitioner was to blame for the lengthy delay, this Court construes the PCR appellate court's ruling to have addressed only the reason-for-delay prong of the *Barker* four-factor test, which is described in more detail below.  *See infra.*

The Sixth Amendment of the United States Constitution states, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. "[T]he right to a speedy trial is fundamental and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." *Barker*, 407 U.S. at 515. To determine if a defendant's right to speedy trial has been violated, courts employ a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (citing *Barker*, 407 U.S. at 530). Some of the factors courts should consider when applying this test are: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Brillon*, 556 U.S. at 90; *Barker*, 407 U.S. at 530. While deliberate delays by the prosecution obviously weigh heavily against the State, "more neutral reasons such as negligence or overcrowded courts weigh less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Brillon*, 556 U.S. at 90 (internal quotation marks omitted).

Although inordinate delays would surely impair a defendant's ability to present an effective defense, "the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense." *United States v. MacDonald*, 456 U.S. 1, 8 (1982) (quoting *Barker*, 407 U.S. at 532-33). Therefore, the primary purpose of this right, beyond preventing prejudice to the defendant's ability to present a defense, is to "minimize the possibility of lengthy incarceration prior to trial, to reduce the . . . impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *Id.* A guilty plea does not extinguish a defendant's right to speedy trial, because "[a] guilty plea [only] renders irrelevant those constitutional violations not logically

inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established." *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975). The *Barker* factors "may carry quite different weight where a defendant is incarcerated after conviction in another State, but no court should overlook the possible impact pending charges might have on his prospects for parole and meaningful rehabilitation." *Moore v. Arizona*, 414 U.S. 25, 27 (1973). "[T]he possibility that a defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." *Strunk v. United States*, 412 U.S. 434, 437-38 (1973) (*quoting Smith v. Hooey*, 393 U.S. 374, 378 (1969)). Once a *Barker* inquiry has been triggered, it is the state, not the defendant, who bears the burden of justifying the delay. *See Barker*, 407 U.S. at 527.

Here, as noted, the state courts did not address any factor of the *Barker* test other than the reason for delay prong. Instead, they focused only on that factor and concluded that because Petitioner was entirely to blame for the delay, no sixth amendment violation had occurred. In its ruling on the motion to dismiss the indictment, the trial court found that:

> The defendant cannot reasonably expect to be brought to trial within the one hundred twenty day time frame while at the same time filing numerous pretrial motions requiring the testimony of a number of witnesses and experts. The defendant cannot intentionally act in such a manner that causes the disposition of his indictment to occur beyond the one hundred and twenty day statutory period and then complain later when the State failed to try him within that statutory time frame.

> The continuance is granted based on the filing of these motions, both necessary, reasonable and constitutionally broad. Indeed, they were the logical consequence of defendant's constitutional rights to pursue pretrial litigation. The delay necessitated by this litigation does not, therefore, run afoul of the IAD or the standards set forth in *Barker versus Wingo*.

(Plea Tr. 12.) Both the PCR trial court and the PCR appellate court echoed those findings. (*See* Pet. 44 ("Petitioner was the cause of the delay as he filed numerous valid pretrial motions in

19

furtherance of exercising his constitutional rights.  As such, Petitioner cannot claim that his speedy trial right was violated because the motions defense counsel was duty bound and rightfully filed in order to advocate on behalf of Petitioner, took an extensive period of time to complete."); *Id.* at 55 ("[T]he matter had been delayed because defense counsel filed numerous pretrial motions . . . and the resulting delay was not an unconstitutional denial of defendant's right to a speedy trial.").)

As is typical for speedy trial claims, the reason for delay is the most difficult factor to analyze in this case.  *See United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) ("The flag all litigants seek to capture is the second factor, the reason for delay.").  The Court, however, has serious concerns with regard to the state court's findings.  As the Court's timeline in the background section, *supra*, makes clear, the procedural history of this case is fraught with delays that are unexplained by the record, and it took almost seven and a half years before the New Jersey indictment finally resulted in a conviction by guilty plea.  Specifically, there were delays that were not addressed by any of the state courts in reaching their findings that Petitioner's filing of motions was entirely to blame for the overall lengthy delay.  Indeed, there were delays not only during the time when Petitioner's pretrial motions were pending, but also before the motions were filed and after the motions were decided.

First, there were delays at the start of the case.  According to the appellate court, an agreement on extradition was reached on August 20, 2003.  *Nguyen*, 419 N.J. Super at 419.  Yet, Petitioner was not extradited until November 17, 2003, and the arraignment hearing was not held until February 20, 2004.  In other words, even after Petitioner was available for prosecution, the prosecution did not seem to begin until six months had passed.  In fact, this argument was raised by trial counsel in his motion to dismiss the indictment.  (Pet'r's Br. in Support of Mot. to Dismiss the Indictment 5, ECF No. 14-1 (arguing that the indictment should be dismissed under the IAD

"where the State had failed to make any effort to obtain custody of the defendant[] pursuant to [its] original request").)  The trial court, in rejecting Petitioner's motion, found that the IAD's 120-day period was not violated because the delay was due to Petitioner's motions.  But a period of over 120 days had already passed before Petitioner filed a single motion.

There were also delays after Petitioner's motions were decided that the state court did not address.  As the timeline indicates, all of Petitioner's pretrial motions were decided by February 11, 2009.  Nonetheless, trial was not scheduled until June 2009, and upon the prosecution's request, trial was postponed until September 23, 2009, resulting in another seven months of delay that in no way can be attributed to Petitioner's motions.  In sum, thirteen months of delay accumulated apart from any delay that may have been caused by the filing of Petitioner's motions.

With regard to Petitioner's motions, the record shows that Petitioner filed only a handful of suppression motions and asserted an insanity defense.  These are hardly atypical of a criminal case, especially in a murder trial.  Petitioner also did not file these motions piecemeal; all of the motions were filed on the same day.  Reviewing the timeline closely, the Court acknowledges that on ten different occasions, the trial court had to adjourn due to inability of the defense counsel to appear.  Nevertheless, on nine of those occasions, the adjournments were for status conferences; only on one occasion was the adjournment for a substantive issue–a pretrial motions hearing on February 22, 2005.  For example, on May 15, 2006, and June 2, 2006, two status conferences were adjourned because defense counsel was on vacation.  It does not appear from the record, however, that there was a need for these status conferences to be held; the trial court had already decided Petitioner's motions to suppress on April 27, 2006, and Petitioner did not file his notice of insanity defense until August 30, 2006.  As such, four months elapsed with the only activities of record being two status conferences that were adjourned.  As far as the Court can deduce, nothing was

21

happening.   The Court recognizes that ten adjournments, caused by Petitioner's counsel's unavailability, may sound excessive in isolation, but adjournments occur in most cases; that in and of itself is no cause for concern.   When a case takes *seven and a half years* to resolve, multiple adjournments are to be expected.

Significantly, the record shows a number of unexplained delays not attributable to Petitioner.   For example, as noted above, Petitioner filed all of his motions on the same day, September 2, 2004.   An initial hearing on the motions to suppress, however, was not scheduled until February 22, 2005.   After that hearing had to be rescheduled due to defense counsel being on trial in another case, it was not held until September 6, 2005, and again on September 27, 2005. No explanation was given as to how the seven-month delay was attributable to Petitioner.   Even if the Court gives the State every benefit of the doubt and infers the unlikely scenario that defense counsel was somehow solely responsible for that seven-month delay, the state court also did not explain why, after the initial hearings were held, Petitioner was responsible for the additional six months it took for the trial court to hold yet another oral argument and decide all but one of the motions on April 27, 2006.[11]   Finally, on February 11, 2009, the trial court issued an opinion on the remaining motion, but that was completed seven months after the trial court had issued an order to proceed on June 26, 2008.   No explanation was given as to how Petitioner could be blamed for the seven months it took to resolve the last remaining motion before trial, after the order to proceed had been issued; indeed, there is no record of a hearing held or supplemental briefs filed with respect to that motion.   The end result is that, excluding the time to resolve Petitioner's insanity

---

[11] The last motion, concerning the admissibility of Petitioner's statements to non-police witnesses, was not decided, presumably because the trial court thought it proper to delay a ruling on the issue until the eve of trial.

defense, *see infra*, it took almost twenty seven months to resolve the motions to suppress, and based on the record, it appears that, at most, seven months may have been due to delays caused by Petitioner.

Furthermore, there were unjustified delays in resolving the insanity defense as well. Petitioner filed a notice of insanity defense on August 30, 2006, yet the trial court did not issue the consent order to release medical records until January 4, 2007, and the State's expert did not examine Petitioner until March 2, 2007, and March 30, 2007; no explanation was given as to how Petitioner contributed to the seven-month delay for the examination to occur. On October 5, 2007, the State's expert again examined Petitioner. According to the timeline, nothing occurred between March and October of 2007, and the state court did not explain why Petitioner was to blame for the State's apparent need to examine Petitioner again six months later. In essence, it appears from the record that it took the State thirteen months to merely assess Petitioner's competency, without any justification as to why this period–within the control of the State–can be attributed to Petitioner. A competency hearing was finally held on December 13, 2007, but, as noted above, the record shows that the order to proceed was not issued until June 26, 2008, after another six months had passed.[12] As such, the record shows that it took the trial court twenty two months to resolve a single notice of insanity defense, and very little justification was provided by the state court as to why Petitioner should be faulted for most of that delay. That amounts to a total of forty nine months to resolve a handful of suppression motions and an insanity defense. Although some reasonable time should be given to the prosecution and the trial court to resolve pre-trial issues,

---

[12] The record indicates that defense counsel had represented to the trial court that the defense was going to evaluate Petitioner with its own expert in January 2008, which apparently did not occur. That still does not explain why the order to proceed was issued in June 2008 and not earlier.

the amount of time the trial court took to decide these issues was problematic. Courts have dealt with much more complex criminal cases in far less time. *See, e.g., United States v. Epstein*, No. 14-287 (D.N.J. filed Oct. 7, 2013) (complex case of organized kidnappings involving six defendants in a conspiracy; trial commenced less than seventeen months after Complaint was filed); *United States v. McQueen*, No. 13-349 (D.N.J. filed May 17, 2013) (armed robbery involving six defendants; pleas entered as to all defendants in twenty one months); *State v. Gartrell*, Indictment No. 08-12-3591, 2014 WL 7288061, at *1-2 (N.J. Super. Ct. App. Div. Dec. 24, 2014) (triple homicide case with insanity defense resulted in guilty plea nineteen months after indictment); *State v. Nayee*, Indictment No. 02-01-0032, 2014 WL 2197863, at *1-2 (N.J. Super. Ct. App. Div. May 28, 2014) (trial commenced on a first-degree murder case with insanity defense less than three years after arrest).

The Court recognizes there is no record evidence that much of the delay was intentionally or directly caused by the prosecution. There is also no evidence in the record, however, and Respondents provide none, that the prosecution attempted to move things along faster. "A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover . . . society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest." *Barker*, 407 U.S. at 527. As the Supreme Court has explained,

> [a]lthough negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. . . . Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution

indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

*Doggett*, 505 U.S. at 657.  Additionally, the State cannot simply rely on a lack of prosecutorial resources or an overcrowded court to justify an extraordinary delay.  *See Brillon*, 556 U.S. at 90; *Strunk*, 412 U.S. at 436 (rejecting the lack of personnel in the United States Attorney's Office as a justification for delay to trial); *Barker*, 407 U.S. at 531.  Indeed, allowing such an excuse to justify the violation of a defendant's right to speedy trial would have the effect of making the right irrelevant altogether.

Each of these delays–the thirteen months pre- and post-motions, the twenty seven months to decide the motions, and the twenty two months for the insanity defense–if viewed separately, could possibly be excused as isolated incidents.[13]  But, as the Supreme Court instructed, when the delay is so extraordinary as was the one here, with each delay caused by each "isolated" incident, the presumption of prejudice grows, and so does the need for the State to provide justification for the delay.  *Doggett*, 505 U.S. at 652.  Viewing the record as a whole, it appears to the Court that the trial court may have operated with a lack of urgency, since Petitioner was already incarcerated and serving time for a different crime.  Just because a defendant is already incarcerated for another offense, however, does not absolve the State from any duty at all under the constitutional guarantee of a speedy trial.  *Hooey*, 393 U.S. at 377.  For example, had the trial been scheduled sooner, Petitioner's New Jersey sentence, which is concurrent with his New York sentence according to

---

[13] The Court notes that each of these delays, separately, was already longer than the presumptive one-year period necessary to trigger a speedy trial analysis; that is, if the Court was to find that even one of these delays was unreasonable under *Barker*, that would suggest that Petitioner's sixth amendment speedy trial rights had been violated.

the plea agreement, might have started earlier, resulting in a reduction of Petitioner's total time of incarceration.

In addition, the state court's finding, that Petitioner was "responsible for most if not all of the delay in bringing this case to trial," is inconsistent with the constitutional guarantee of a speedy trial–a petitioner exercising his rights to defend himself in a murder trial cannot be an excuse for the trial court to take as long as it wants to decide a petitioner's pre-trial filings. The state court's reasoning puts criminal defendants in an impossible predicament where they must pick and choose what constitutional violations to challenge at the risk of forfeiting their speedy trial rights.

To conclude, had trial counsel been found to be ineffective in protecting Petitioner's speedy trial rights in the trial court, the Court might find that Petitioner was prejudiced by such ineffective assistance of counsel. Indeed, if this claim had been raised here as an independent sixth amendment speedy trial claim, the Court could very well find that a constitutional violation had occurred.[14] However, because the Court finds the state court's determination on the first prong, that trial counsel was not ineffective, was a reasonable application of clearly established federal

---

[14] Because the state court directly addressed the merits of a sixth amendment speedy trial claim in the context of Petitioner's ineffective assistance of counsel claim, Petitioner could have raised an independent sixth amendment claim in his federal habeas petition. An independent sixth amendment speedy trial claim here would not be procedurally barred because the claim has been fairly presented to the state court. *See Evans v. Court of Common Pleas, Del. Cnty., Pa.*, 959 F.2d 1227, 1231 (3d Cir. 1992) (finding that courts should look to "the substance of the claim presented to the state courts, rather than its technical designation," and that when the analysis of a claim raised in the state court is virtually indistinguishable from the analysis necessary to adjudicate the claim raised in federal habeas court, the claim is deemed to have been fairly presented in the state court); *Jones v. Phelps*, 599 F. App'x 433, 435 (3d Cir. 2015) (finding that a petitioner's sixth amendment speedy trial claim was not procedurally defaulted even though the petitioner only raised such claim in the context of an ineffective appellate counsel claim; "because this claim was adjudicated on the merits in the state courts, regardless of any default issues, that decision will ultimately be entitled to deference"). Nonetheless, Petitioner did not raise an independent sixth amendment speedy trial claim in his Petition, so the Court cannot and will not decide that issue here.

law, based on a reasonable determination of the facts, the issue of prejudice is not squarely before this Court. As such, because Petitioner fails to establish the first prong of the *Strickland* test, Petitioner is not entitled to relief on this claim.

### D.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Here, the Court finds that reasonable jurists could disagree with the Court's resolution of Ground I, that trial counsel was not ineffective for failing to raise a sixth amendment speedy trial claim in trial court. The Court, however, finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to Grounds II and III. As such, the Court issues a certificate of appealability as to Ground I only. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## IV.    CONCLUSION

For the reasons set forth above, the Petition is DENIED. The Court issues a certificate of appealability as to Ground I only.

  s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: November 19, 2015